Filed 7/9/13  Darden Painting v. Glass Architects CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DARDEN PAINTING, INC., et al. | |
|     Cross-complainants, Cross-defendants and Respondents, | |
| v. | |
| GLASS ARCHITECTS, | A132846 |
|     Cross-defendant, Cross-complainant and Appellant; | (Alameda County Super. Ct. No. RG07343608) |
| ASC PROFILES, INC., | |
|     Cross-defendant and Respondent. | |

Glass Architects (Glass) appeals from the trial court's determinations regarding whether or not it was the prevailing party entitled to costs as against four different parties who are respondents in this appeal, after a jury trial to determine all of the parties' liability for defective work on a community activity center in Newark, California. Respondents disagree with Glass's numerous assertions of error, and also argue that we lack jurisdiction to consider Glass's appellate claims because Glass did not timely appeal from the court's judgment.

We conclude that we lack jurisdiction to consider all but one of Glass's appellate claims because they are untimely made. As for the one claim that has been timely made, against respondent Tnemec Company, Inc. and California Coating Consultants, Inc. (Tnemec), we affirm the trial court's ruling.

1

## BACKGROUND

We summarize just those background facts necessary to resolve this appeal. Some of the briefing contains factual contentions that are not supported by citations to the record. We disregard these contentions. (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 ["Because '[t]here is no duty on this court to search the record for evidence' [citation], an appellate court *may* disregard any factual contention not supported by a proper citation to the record."].)

In August 2007, the City of Newark (Newark) filed a complaint against general contractor W.A. Thomas, Inc. (WATCO) and Travelers Casualty and Surety Company of America. Against WATCO, Newark alleged breach of contract, breach of express warranty, and negligence for defective work done in the construction of its George M. Silliman Community Activity Center (Center).

In October 2007, WATCO filed a cross-complaint, which, as amended over time, brought claims against respondents Darden Painting, Inc. (Darden), Pacific Erectors, Inc. (Pacific), Tnemec, and later, during trial in October 2010, against Glass.

The record and the parties' briefings indicate that these parties filed a series of cross-complaints against each other, and also against respondent ASC Profiles, Inc., doing business as ASC Steel Deck (ASC). Specifically, it appears that: Glass cross-complained against WATCO, Darden, Pacific, and Tnemec. Darden cross-complained against Pacific, Tnemec, Glass, and ASC. Pacific cross-complained against WATCO, Darden, Tnemec, Glass, and ASC.

Tnemec cross-complained against WATCO, Darden, Pacific, Glass, and ASC. However, in September 2009, a year before trial, Tnemec dismissed its negligence cause of action against Glass, with each party to bear its own fees and costs.

Glass and ASC did not cross-complain against each other.

### *Trial, Settlements, and Verdict*

In September 2010, a jury trial started and was conducted over a period of eight weeks. Shortly after the trial started, WATCO settled with Newark for $3.2 million, which the court determined was made in good faith pursuant to Code of Civil Procedure

2

section 877.6, and Newark was dismissed as a party. WATCO proceeded with its claims for indemnity against the remaining parties.

Before the end of trial, WATCO settled separately with Darden and Glass regarding its indemnity claims against them. Darden agreed to settle with WATCO at an amount valued at $1,062,000, which settlement the court found to be made in good faith pursuant to Code of Civil Procedure section 877.6.[1]

Glass agreed to pay WATCO the remainder of its insurance policy, which settlement the court found on November 15, 2010, was made in good faith within the meaning of Code of Civil Procedure sections 877 and 877.6. Glass ultimately made a total payment, including its insurance deductible, of $481,874.50. As part of this determination, the court ordered at the November 15 hearing that all existing cross-complaints against Glass were dismissed and forever barred. Glass's counsel indicated at the hearing that all cross-complaints were dismissed, without distinguishing between those against it and those it brought against others. The trial court then informed the jury that Glass would not be participating in closing arguments, although the allocation of fault to Glass would be submitted to it. The court further stated: "Glass has settled its differences with WATCO and has no remaining claims or claims to defend with respect to any of the other parties."

WATCO pursued its indemnity claims against the remaining parties. After trial, the jury returned a special verdict finding the settlement between Newark and WATCO was not unreasonable, and allocating percentages of fault among the parties, including those who had settled with WATCO, regarding damage to the "steel decking," "structural steel," "aluminum duct," and "miscellaneous steel." The jury allocated WATCO's damages as 17 percent to the steel decking, 40 percent to the structural steel, 30 percent to the aluminum duct, and 13 percent to the miscellaneous steel. The jury determined the percentage of damage to the four surfaces substantially caused by the negligence of the parties. It found regarding the parties to this appeal that Darden and Glass had the

[1] The court's order was made orally on November 15, 2010, as indicated in its subsequent written order, filed on February 8, 2011.

3

greatest overall liability, followed by Tnemec, and that ASC and Pacific were not liable at all.

The jury found regarding the parties to this appeal that Darden and Glass had the greatest overall liability, followed by Tnemec, and that ASC and Pacific were not liable at all.

### *The Original Judgment Issued by the Court*

Glass moved for prevailing party determinations.  It asserted in a proposed order that it was the prevailing party as against the cross-complaints filed by Darden, Tnemec, and Pacific, which were dismissed as part of the court's determination that Glass's settlement with WATCO was made in good faith, and that the three should be found jointly and severally liable for Glass's costs.  Glass further asserted that, as a result of its representation to the court, as part of its good-faith settlement with WATCO, that its cross-complaints against Darden, Tnemec, and Pacific were dismissed, as well as the court's instruction to the jury that Glass had no remaining claims or claims to defend regarding any other parties, Glass's cross-complaints against these three parties had been dismissed on November 15, 2010, and no parties prevailed regarding these cross-complaints.

Around the same time, WATCO submitted a proposed judgment to the court.  Glass objected to it, including to WATCO's reference in paragraph 8 to Glass as a nominally prevailing party on Tnemec's negligence cause of action, which Glass objected to because Tnemec had dismissed it in September 2009, a year before trial.  Glass also argued that, unlike in WATCO's proposed judgment, it should be named prevailing party as against Pacific, Tnemec, and Darden, and should be awarded its costs as against those parties.

On February 4, 2011, the deputy clerk of the court mail-served the parties with a judgment after jury trial and verdict, issued on February 3, 2011 (original judgment).  The original judgment, with the court's edits by hand, contains several provisions germane to this appeal:  First, although Glass had asserted it was the prevailing party as

4

against Darden, the original judgment does not state that Darden or Glass prevailed as against the other.

Second, in paragraph 10 of the original judgment, the court ordered that Glass would take nothing on its equitable indemnity and contribution causes of action against Tnemec and Pacific; Tnemec would take nothing on its equitable indemnity cause of action against Glass; and that Pacific was the prevailing party as against Glass and entitled to its costs. Paragraph 10 of the original judgment, as hand-edited by the court, reads: "Glass Architects shall take nothing on its equitable indemnity and contribution causes of action against Tnemec and Pacific Erectors, Inc. Tnemec shall take nothing on their respective equitable indemnity causes of action against Glass. Pacific Erectors, Inc. and ASC are the prevailing parties as against Glass, are entitled to their respective costs against Glass."

Third, although Glass and ASC had not cross-complained against each other, ASC was declared the prevailing party, and entitled to its costs, as against Glass.

Fourth, in paragraph 8, regarding Tnemec's negligence cause of action, the court crossed out two references to Glass, but left in a third. Thus, paragraph 8, as hand-edited by the court, reads: "Tnemec shall take nothing on its negligence cause of action against Darden, Pacific Erectors, Inc., and ASC. Darden, Pacific Erectors, Inc., ASC, and Glass Architects are nominally the prevailing party as against Tnemec, however Darden is not entitled to its costs against Tnemec re Tnemec's negligence cause of action. ASC is entitled to its costs as against Tnemec re Tnemec's negligence cause of action[.]"

### Postjudgment Cost Memoranda and Motions

The original judgment did not determine cost amounts to be paid to prevailing parties. Glass, WATCO, Pacific, and ASC each filed memorandum of costs. Glass's costs totaled $32,276.85, Pacific's totaled $30,650.78, and ASC's totaled $32,664.78.

Glass also filed a motion to correct the judgment for clerical mistake or, in the alternative, to strike or tax costs sought by ASC, arguing on a variety of grounds that ASC could not be a prevailing party as against Glass. Glass also moved to strike or tax costs sought by Pacific. Glass did not file a notice of appeal from the original judgment.

5

Tnemec filed a motion to correct a clerical error in the original judgment as well. It argued that the court made a clerical error in paragraph 8 when it designated Glass as the nominally prevailing party as against Tnemec on Tnemec's negligence cause of action.

After holding an April 2011 hearing regarding the various motions and memoranda of costs submitted by the parties, the trial court issued a tentative order in May 2011, and ordered the parties to meet and confer to determine dollar amounts to be awarded that the court had left blank, without revisiting the court's rulings. The tentative order granted Tnemec's clerical error motion, striking the reference to Glass as a prevailing party regarding Tnemec's negligence cause of action in paragraph 8 of the original judgment, and denied both of Glass's motions and its memorandum of costs.

### The Modified Judgment Issued By the Court

On June 6, 2011, the trial court issued a "Modified Judgment After Jury Trial and Verdict" (modified judgment). The court did not change any of the prevailing party determinations it had ordered in the original judgment, except to remove "and Glass Architects" from paragraph 8 as requested by Tnemec in its clerical error motion, nor did the court further address whether Darden or Glass prevailed as against each other.

In the modified judgment, the court also included a section entitled "Post-Trial Order on Motions to Amend Judgment, to Strike or Tax Memoranda of Costs, and to Award Attorney's Fees." In this section, the court ordered, among other things, that ASC was entitled to most of its $32,664.78 of costs and that Glass, Darden, and Tnemec were to pay them on a pro rata basis, i.e., $9,837.55 each. It ordered that Pacific was entitled to most of its $30,650.78 of costs, and that Glass, WATCO, Darden, and Tnemec were to pay them on a pro rata basis, i.e., $6,435.86 each. It denied Glass's memorandum of costs, motion to strike or tax costs regarding Pacific, and motion to correct the judgment for clerical error.

Importantly, the court also stated in the modified judgment: "This Modified Judgment After Jury Trial and Verdict supersedes the February 3, 2011 Judgment, except

6

that the February 3, 2011 date of entry shall remain the effective date of entry of the Modified Judgment."

### *Glass's Notice of Appeal*

On August 4, 2011, Glass filed a notice of appeal regarding the "judgment after jury trial," indicating that the "judgment" had been entered on June 6, 2011, the date the modified judgment was filed.

In its brief, Darden argues that we do not have the jurisdiction to consider Glass's appeal regarding Darden because Glass did not timely appeal from the original judgment. Glass disagrees. We asked Glass, ASC, Tnemec, and Pacific to provide supplemental briefing regarding our jurisdiction to consider Glass's appeal, which they provided. Like Darden, these other respondents each argues that we do not have jurisdiction to consider Glass's appellate claims against it because Glass did not timely appeal from the original judgment. Glass disagrees with each of these arguments as well.

### DISCUSSION

On appeal, Glass presents numerous arguments why the trial court's prevailing party determinations and resulting costs awards regarding Glass were wrong and should be reversed. Glass emphasizes that, in its view, the court's ordering Glass to pay costs for ASC, Pacific, and Tnemec *after* Glass settled with WATCO for the entire amount remaining on its insurance policy, which settlement the court found was made in good faith, "endangers the continued viability of favoring good faith settlements throughout the State of California and, more immediately, exposes a party found to have settled in good faith to added litigation costs." Also, Glass argues, the trial court's judgment, by denying Glass recovery of its costs from Darden, Tnemec, and Pacific, "may chill the willingness of defendants and cross-defendant[s] to settle for remaining insurance policy limits, because that will not end the settling party's exposure beyond his or her insurance policy limits." In its opening brief, Glass presents 18 categories and subcategories of arguments to explain why ASC and Pacific *should not* have been designated prevailing parties as against Glass and Glass *should* have been designated the prevailing party as against Darden, Pacific, and Tnemec.

7

Respondents ASC, Darden, Pacific, and Tnemec each opposes Glass's arguments against it. We do not address the merits of most of Glass's arguments, however, because of our conclusion that we lack jurisdiction to consider most of Glass's appeal.

## I. *Our Jurisdiction to Consider Glass's Appeal*

We conclude that Glass did not timely appeal from the court's rulings regarding Darden, ASC, Pacific and, for the most part, Tnemec. Therefore, we have no jurisdiction to consider them and must dismiss most of Glass's appeal.

## A. *Timeliness of Glass's Appeal*

The original judgment was mail-served by the deputy clerk of the court on February 4, 2011. Therefore, pursuant to the California Rules of Court, Glass was required to file a notice of appeal from the original judgment within 60 days of February 4, 2011. (Cal. Rules of Court, rule 8.104(a)(1)(A).)[2] "Once a final, appealable order or judgment has been entered, the time to appeal begins to run." (*Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583.) "If a notice of appeal is filed late, the reviewing court must dismiss the appeal." (Cal. Rules of Court, rule 8.104(b).) "The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal." (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56.) Glass did not file a notice of appeal from the original judgment.

A modified judgment may begin a new appeal period, but only if it contains a substantial modification of the original judgment. " 'The effect of an amended judgment on the appeal time period depends on whether the amendment substantially changes the judgment or, instead, simply corrects a clerical error.' [Citation.] 'When the trial court

---

[2] According to the California Rules of Court, "a notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment." (Cal. Rules of Court, rule 8.104(a)(1).)

amends a nonfinal judgment in a manner amounting to a *substantial modification* of the judgment (e.g., on motion for new trial or motion to vacate and enter different judgment), the amended judgment supersedes the original and becomes the appealable judgment (there can only be *one* "final judgment" in an action . . .). Therefore, a new appeal period starts to run from notice of entry or entry of the *amended* judgment.' " (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 (*Torres*).)

In order to determine the timeliness of the appeal, we focus on the appellate claim made between the particular parties involved. "The crux of the problem . . . is whether there is a substantial change in the rights of the parties such that allowing an amendment nunc pro tunc (relating back to the original judgment) would unfairly deprive them of the right to contest the issue on appeal or otherwise. . . . [I]t is ultimately the parties' ability to challenge the ruling that is key. The right we are concerned with materially affecting is the right to appeal." (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 506-508.)

However, a modification of a judgment to add such things as costs does *not* begin a new appeal period. "It is well settled . . . that '[w]here the judgment is modified merely to add costs, attorney fees and interest, the original judgment is not substantially changed and the time to appeal it is therefore not affected.' [Citations.] 'When a party wishes to challenge both a final judgment *and* a postjudgment costs/attorney fee order, the normal procedure is to file *two separate appeals*: one from the final judgment, and a second from the postjudgment order.' " (*Torres*, *supra*, 154 Cal.App.4th at p. 222.)

Furthermore, "[i]n order to be appealable, a postjudgment order must also raise an issue different from those embraced in the judgment; otherwise it would give a party two chances to appeal the same ruling and thus . . . circumvent the time limit on appealing from the judgment." (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 161.)

Glass's notice of appeal was filed on August 4, 2011, and was from the modified judgment. Therefore, it was untimely as to those matters resolved in the original judgment, unless the modified judgment contained a substantial modification regarding

these matters. We now consider whether this is the case with regard to each of Glass's appellate claims.

## B. *Darden*

Glass asserts that the trial court should have found it was the prevailing party as against Darden for several reasons, including because the jury's verdict allocated significantly more liability to Darden than to Glass; Darden's settlement payment was more than twice that of Glass; Glass had the right to recover costs from Darden pursuant to Code of Civil Procedure section 1032, subdivision (b); and only Glass could prevail because Darden brought Glass into the litigation. Darden responds that we have no jurisdiction to consider these arguments because Glass did not appeal from the original judgment and the court's prevailing party determination between the two parties was not substantially modified by the modified judgment. We agree with Darden.

The trial court did not expressly address this prevailing party issue in the original judgment. However, before the court issued the original judgment, Glass submitted both a proposed order and an objection to WATCO's proposed order, proposing in both that it be declared the prevailing party as against Darden. Nonetheless, the court did not designate Glass or Darden as prevailing party vis-à-vis the other in the original judgment.

At the April 2011 hearing to discuss the parties' postjudgment cost memoranda and motions, Glass's counsel reasserted its argument that Glass was the prevailing party as against Darden and entitled to its costs. Nonetheless, the court again did not name Glass or Darden as the prevailing party vis-à-vis the other in the modified judgment.

Glass asserts that the trial court did not consider the matter until the modified judgment, when the trial court denied Glass's memorandum of costs. It contends regarding the original judgment that "[t]he clerk of the court . . . overlooked this issue, resulting in the court not addressing the prevailing party" issue between Glass and Darden. Glass provides no support for this assertion, or explanation why the court also did not expressly address the issue in the modified judgment either, including in its denial of Glass's memorandum of costs. We have no reason to believe that the trial court overlooked the issue when it issued the original judgment; rather, we conclude that it

10

decided not to designate either Darden or Glass as the prevailing party; in other words, pursuant to the original judgment, neither party achieved prevailing party status.

Glass further argues that it followed proper procedure because, according to Glass, when a trial court "is silent [in its judgment] on a prevailing party issue, the solution is for the prevailing party to file a Memorandum of Costs." However, the case Glass relies on, *Williams v. Santa Maria Joint Union High School Dist.* (1967) 252 Cal.App.2d 1010, addresses what to do when a judgment contains no provision for *mandatory costs* (*id*. at p. 1014), which is different than a judgment that does not declare either party as the prevailing party. Therefore, Glass's argument is unpersuasive.

Glass also argues that the reporter's transcript for the April 18, 2011 hearing indicates that the original judgment was never filed. The record indicates otherwise.

Finally, Glass argues that the trial court, by making the modified judgment effective as of the date of the original judgment, February 3, 2011, improperly rendered that judgment non-appealable. Again, we disagree. As Glass indicates, generally, "a superior court *cannot* prohibit an appeal from its own judgment." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1999) ¶ 2:7.5, pp. 2-13, citing *MacDonald v. Superior Court* (1977) 75 Cal.App.3d 692, 696-697; see also *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1222, fn. 4 [finding it "highly inappropriate for a trial court to attempt to dissuade a litigant from exercising his or her right to appeal"].) However, the trial court took no such action here. There was no substantial modification of the original judgment as to the prevailing party issue between Glass and Darden (or, as we will discuss, regarding any appellate claim by Glass). To the extent the court ruled regarding Glass's memorandum of costs (as well as a motion to tax costs by Darden that is referred to in the modified judgment, but which motion is not contained in the record) in the posttrial order section of the modified judgment, this was not a substantial modification of the original judgment either. (*Torres, supra,* 154 Cal.App.4th at p. 222.) The trial court did nothing to dissuade Glass from appealing from the original judgment regarding Darden, or any other party for that matter.

11

In short, Glass is not excused from its failure to appeal from the original judgment simply because the trial court issued a modified judgment that contained no changes regarding the prevailing party issue between Glass and Darden. (*Torres, supra,* 154 Cal.App.4th at p. 222.) Because Glass failed to appeal from the original judgment with 60 days of its service to the parties by the deputy clerk of the court, we have no jurisdiction to consider its appellate claims regarding Darden. (Cal. Rules of Court, rule 8.104(a)(1)(A).)

## C. *Pacific*

Glass's appeal regarding Pacific asserts that the trial court committed reversible error when it declared Pacific to be the prevailing party as against Glass because Glass's cross-complaint was dismissed as part of the trial court's determination that Glass's settlement with WATCO was in good faith. Therefore, Glass contends, the trial court should not have ordered it to pay $6,435.86 in costs to Pacific. Glass also asserts the court should have declared it the prevailing party as against Pacific and ordered Pacific to pay its pro rata share of Glass's $32,276.85 in costs.

Pacific disagrees with each of Glass's arguments, and also asserts that this court lacks jurisdiction to consider them for essentially the same reasons asserted by Darden. We agree with Pacific that we lack jurisdiction to consider Glass's arguments.

In its original judgment, the trial court determined Pacific to be the prevailing party as against Glass, and entitled to its costs. In its modified judgment, the trial court repeated the same determination, without making any changes. It is this determination that Glass complains of on appeal.

In its supplemental briefing, Glass argues that it could only appeal from the modified judgment because the original judgment was "silent," or at least "ambiguous," regarding Pacific's cross-complaint against Glass, since it did not state whether Glass or Pacific prevailed as against Glass regarding this cross-complaint. According to Glass, the court's silence, or at least its ambiguity, rendered the original judgment "interlocutory and unappealable in that it did not make a final determination of all issues and did not address [Pacific's] cross-complaint against [Glass]," based on cases in which judgments

12

failed to dispose of cross-complaints (see *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698; *Nicholson v. Henderson* (1944) 25 Cal.2d 375, 380-381), or where a court determined a ruling on a motion brought pursuant to Code of Civil Procedure section 437c was not a final judgment (see *Olson v. Cory* (1983) 35 Cal.3d 390, 398-399). Glass contends, much as it does regarding Darden, that the trial court did not address who prevailed between Glass and Pacific until the modified judgment, when the court ruled that Glass was obligated to pay pro rata costs to Pacific and denied Glass's memorandum of costs.

Glass's argument is unpersuasive in light of the record before us. As Glass acknowledges, Pacific's cross-complaint against Glass was dismissed on November 15, 2010, as part of the court's determination that the Glass settlement with WATCO was in good faith. In other words, the cross-complaint was disposed of by dismissal, making the cases cited by Glass inapposite.

Also, the record indicates that the court considered, and decided, in the original judgment that Pacific was the prevailing party as against Glass after taking into account the parties' cross-complaints against each other. As Glass also acknowledges, prior to the court's issuance of the original judgment, Glass proposed that it be found the prevailing party as against Pacific regarding Pacific's cross-complaint. The court rejected this proposal and determined that Pacific was the prevailing party, as indicated by its hand edits of paragraph 10 of the original judgment. The trial court's deletion of "and Pacific" in the second line of paragraph 10 indicates that Pacific was not barred from obtaining costs against Glass regarding Pacific's cross-complaint, and was immediately followed by the court's designation of Pacific as the prevailing party as against Glass. This establishes that the court considered Pacific's cross-complaint in making its prevailing party designation in the original judgment. Furthermore, the modified judgment contained the same paragraph 10, unchanged in any way.

In the modified judgment, the trial court also ordered Glass to pay a pro rate share of Pacific's costs in the amount of $6,435.86. However, Glass does not appeal from this

13

section of the court's order regarding Pacific, which in any event is not a substantial modification of the original judgment. (*Torres, supra,* 154 Cal.App.4th at p. 222.)[3]

In short, as with Darden, Glass is not excused from its failure to appeal from the original judgment simply because the trial court issued a modified judgment that contained no changes regarding the prevailing party issue between Glass and Pacific. (*Torres, supra,* 154 Cal.App.4th at p. 222.) Because Glass failed to appeal from the original judgment within 60 days of its service to the parties by the deputy clerk of the court, we have no jurisdiction to consider its appellate claims regarding Pacific. (Cal. Rules of Court, rule 8.104(a)(1)(A).)

**D. *ASC***

Glass's appeal regarding ASC asserts that the trial court committed reversible error when it declared ASC to be the prevailing party as against Glass, leading to an award of $9,837.55, for numerous reasons, including because Glass and ASC did not cross-complain against each other; ASC could not be declared a prevailing party as against Glass in light of the provisions of Code of Civil Procedure section 1032, subdivision (a)(4); ASC had purportedly waived any right to costs from Glass prior to the issuance of the original judgment; and the trial court abused its discretion in awarding costs against Glass because the court did not also award costs against WATCO, who also did not cross-complain against ASC and because the court's good faith settlement ruling should extend to cost claims of non-settling parties.

Like Darden and Pacific, ASC argues that Glass's appeal is untimely against it because of Glass's failure to appeal from the original judgment within 60 days of the deputy clerk's service of the original judgment. ASC is correct in that the court determined in paragraph 10 of the original judgment that ASC was the prevailing party over Glass, and made no change in this determination in the modified judgment.

---

[3] Glass also argues that changes in the modified judgment regarding ASC's costs were a substantial modification of the original judgment and were "interwoven" with Glass's appeal regarding Pacific's costs. We reject this argument regarding ASC. Therefore, we reject it regarding Pacific as well.

14

Therefore, unless there was a substantial modification regarding the issue in the modified judgment, Glass's appeal regarding ASC is untimely.

Glass argues that just such a substantial modification regarding its liability to ASC was made because, while the original judgment provided that ASC had prevailed as against four parties, including Glass, the modified judgment removed Pacific as a party responsible for ASC's costs, leaving three parties to pay ASC's costs on a pro rata basis. As a result, in the modified judgment Glass was responsible for 33 percent of ASC's costs, rather than 25 percent; according to Glass, under the original judgment, Glass would have been expected to pay $7,378.16, but pursuant to the modified judgment it was ordered to pay $9,837.55. Since this is a 33 percent increase in costs, Glass argues, it is a "material change restarting the 60-day period for filing a notice of appeal."

Glass relies on *Sanchez v. Strickland* (2011) 200 Cal.App.4th 758 (*Sanchez*) and *Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736 (*Stone*) for this argument. In *Sanchez*, the court filed an amended judgment that reduced the damages award to a plaintiff from $242,660.78 to $169,862.55, a reduction of $72,798.23, because of an error acknowledged by the parties. (*Sanchez*, at pp. 763-764.) The defendants argued that the plaintiffs' appeal was untimely because this damages award reduction did not substantially modify the original judgment. (*Id*. at p. 764.) Glass notes the appellate court's conclusion that appeal was timely because the reduction was a substantial modification. Among other things, the court reasoned, "from a quantitative perspective, a reduction of an award by 30 percent or, in absolute terms, by $72,800, is material. Thus, the situation presented is not one where the respective legal rights and duties omitted from the original judgment resulted in only a trivial or de minimis change in the amount of the amended judgment." (*Id*. at p. 767.) The merits of the appeal involved the amount of this damages award, which the appellate court increased to $174,776.55. (*Id*. at p. 769.)

In *Stone*, the Regents of the University of California (Regents) appealed from a judgment directing a writ of mandate issue to compel them to provide a defense to petitioner Stone in a civil action against him. (*Stone*, *supra*, 77 Cal.App.4th at p. 739.)

15

As part of its original judgment, the court directed that a writ of mandate issue to compel the Regents to pay for Stone's defense from May 25, 1996, which date the court subsequently changed to March 25, 1995, upon a motion for reconsideration and then to June 12, 1995, in a modified judgment. (*Id*. at p. 743.) The Regents appealed from the modified judgment, and Stone argued that the appeal was untimely because it should have been from the original judgment. (*Ibid*.) The appellate court rejected Stone's argument, finding that the modification that required the Regents to pay Stone's legal expenses for an additional nine months materially affected their rights. (*Id*. at p. 744.) On the merits, the appellate court reversed the lower court's judgment because it concluded that the Regents did not abuse their discretion in turning down Stone's defense. (*Id*. at p. 749.)

Neither *Sanchez* nor *Stone* is applicable to the present case because in both cases, the modification involved was to a term in the initial judgment itself and was an issue raised in the appeal. Here, on the other hand, Glass does *not* argue on appeal that the amount it was ordered to pay in costs should have been less. Instead, Glass challenges the trial court's prevailing party determination on a variety of grounds, which determination was unchanged between the original judgment and the modified judgment. Furthermore, the original judgment *did* give Glass an indication that it would be responsible for a one-third pro rata share of ASC's costs, rather than a one-quarter share. The court expressly stated in paragraph 9 of the original judgment that, although ASC was the prevailing party as against Pacific, it had waived recovering its costs from Pacific. Glass acknowledges this waiver, but asserts that the original judgment "limited Glass's exposure to one-fourth of ASC's costs," without explaining how. We do not find such a limitation in the original judgment.

We conclude that Glass has not established that there was a substantial modification of the original judgment that is germane to its appeal regarding ASC. Glass is not excused from its failure to appeal the original judgment simply because the trial court issued a modified judgment that contained no changes regarding the prevailing party issue between Glass and ASC. (*Torres, supra,* 154 Cal.App.4th at p. 222.)

16

Because Glass failed to appeal from the original judgment with 60 days of its service to the parties by the deputy clerk of the court, we have no jurisdiction to consider its appellate claims regarding ASC. (Cal. Rules of Court, rule 8.104(a)(1)(A).)

## E. *Tnemec*

Glass's appeal regarding Tnemec asserts four arguments for why the trial court committed reversible error by not determining that Glass was the prevailing party as against Tnemec. Tnemec opposes these arguments, and also argues that Glass's appeal regarding it is untimely made, for the same reasons asserted by the other respondents.

We conclude that three of Glass's appellate arguments relate entirely to the court's original judgment and, therefore, are untimely made. They are that the court's ruling that Glass's settlement with WATCO was made in good faith included the dismissal of Tnemec's remaining cross-complaint claims; Glass was entitled to the prevailing party determination pursuant to Code of Civil Procedure section 1032 because its WATCO settlement was far less than the judgment against Tnemec; and the trial court's purported dismissal of Glass's cross-complaint against Tnemec upon determining that Glass's WATCO settlement was in good faith did not entitle Tnemec to be designated the prevailing party against Glass.

Each of these three arguments relates to the trial court's determinations in paragraph 10 of the original judgment that neither Tnemec nor Glass were to receive any costs from each other regarding claims in their respective cross-complaints against each other.[4] As we have discussed, paragraph 10 remained unchanged in the modified judgment. Glass does not establish that there was a substantial modification of the

---

[4] In its supplemental reply briefing regarding our jurisdiction to consider its appeal, Glass argues for the first time that the court did not rule on all of the causes of action brought by Tnemec against Glass until its modified judgment. Glass does not provide citation in the record to Tnemec's cross-complaint, however. We disregard the argument as tardily made (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [" '[p]oints raised for the first time in a reply brief will ordinarily not be considered' "]) and because of Glass's failure to provide citation to the record that is sufficient for this court to evaluate its argument. (*Grant-Burton v. Covenant Care, Inc.*, *supra*, 99 Cal.App.4th at p. 1379.)

17

original judgment regarding these claims that is germane to its appeal regarding ASC. Therefore, Glass cannot be excused from its failure to appeal the original judgment regarding these claims. (*Torres, supra,* 154 Cal.App.4th at p. 222.) Because Glass failed to appeal from the original judgment with 60 days of its service to the parties by the deputy clerk of the court, we have no jurisdiction to consider these appellate claims regarding Tnemec. (Cal. Rules of Court, rule 8.104(a)(1)(A).)

Glass also argues that the trial court determined that it was the prevailing party as against Tnemec in paragraph 8 of the original judgment and that the court lacked jurisdiction to delete this designation in the modified judgment. According to Glass, its appeal regarding all Tnemec issues has been timely made from the modified judgment because this deletion amounts to a substantial modification pursuant to such case law as *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042 (*CC-California*).

We disagree for two reasons. First, the trial court's reference to Glass as "nominally the prevailing party" in that paragraph, and its subsequent deletion in the modified judgment, related to Tnemec's negligence cause of action only. The court determined in paragraph 10 of the original (and modified) judgment that neither Glass nor Tnemec were to take anything from each other on claims in their cross-complaints.

Second, Glass does not cite to anything that establishes that the court's change in the modified judgment was an exercise of judicial discretion. To the contrary, all of the evidence in the record indicates the change was of a clerical nature, which distinguishes this case from *CC-California*.

In *CC-California*, an opinion issued by this court, the trial court issued a judgment of nonsuit in May which referred to the wrong entity as the losing party; the entity, Dillingham, had assigned its indemnity rights to CC-California, which had then prosecuted these claims against the defendant, Paller. (*CC-California*, *supra*, 51 Cal.App.4th at p. 1046.) The trial court verbally granted Dillingham's motion to correct the judgment in June, but did not issue a corrected judgment until a little more than three months later, in October. (*Ibid*.) CC-California filed a notice of appeal from the

18

judgment of nonsuit in September; Paller argued the appeal was untimely because the notice was filed considerably past the deadline for an appeal from the original May judgment. (*Id*. at p. 1047.)

We rejected Paller's untimeliness argument. We summarized the rule on the matter as follows: " 'The effect of an amended judgment on the appeal time period depends on whether the amendment substantially changes the judgment or, instead, simply corrects a clerical error: . . . When the trial court amends a nonfinal judgment in a manner amounting to a *substantial modification* of the judgment (e.g., on motion for new trial or motion to vacate and enter different judgment), the amended judgment supersedes the original and becomes the appealable judgment . . . . Therefore, a new appeal period starts to run from notice of entry or entry of the *amended* judgment. . . . On the other hand, if the amendment merely corrects a *clerical error* and does not involve the exercise of judicial discretion, the original judgment remains effective as the only appealable final judgment; the amendment does *not* operate as a new judgment from which an appeal may be taken.' " (*CC-California*, *supra*, 51 Cal.App.4th at p.1048.) We rejected the argument that the change in that case was clerical rather than substantive: "To us the issue is relatively easy; we cannot imagine a more substantial or material change in the form of a judgment than in the identity of the losing party." (*Id*. at pp. 1048-1049.)

Unlike in *CC-California*, in the present case the trial court granted Tnemec's motion to correct clerical error, indicating that the court itself concluded its error was merely clerical. The record supports this conclusion. The trial court extensively edited paragraph 8 of the original judgment by hand and deleted two of the three references to Glass in the paragraph, which indicates that the court also intended to delete, but simply missed, the third reference. This is further supported by the fact that, as Tnemec points out, the court did not state that Glass was entitled to recover any costs from Tnemec in paragraph 8. Furthermore, as Tnemec also points out, Glass could not be entitled to costs on its negligence cause of action because Tnemec's dismissal included the parties' waiver of fees and costs. Glass ignores this waiver. Furthermore, given that Glass was not

19

entitled to costs in any event, the court's deletion of Glass as nominally a prevailing party in paragraph 8 was not a material change.

In short, we conclude the court's deletion in paragraph 8 of Glass as a prevailing party as against Tnemec was a clerical change regarding Tnemec's negligence cause of action only, and not a substantial modification of the original judgment that gave Tnemec a new time period for filing a notice of appeal regarding all of its appellate claims against Tnemec.

Having determined this, we conclude Glass *has* timely appealed from the trial court's modified judgment to the extent it argues that the trial court lacked jurisdiction to make this deletion in the modified judgment. A motion to correct the judgment for clerical error is separately appealable as a postjudgment order. (*Bowden v. Green* (1982) 128 Cal.App.3d 65, 68 fn. 1). Glass's notice of appeal from the modified judgment encompasses the court's order granting Tnemec's motion to correct the original judgment for clerical error and, therefore, this limited appellate claim is timely made. Nonetheless, we reject Glass's argument for the following reasons.

As stated in a case cited by Tnemec, " ' "A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a nunc pro tunc order." ' " (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 852.) " '[I]t is not proper to amend an order nunc pro tunc to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did. An order made nunc pro tunc should correct clerical error by placing on the record what was actually decided by the court but was incorrectly recorded.' " (*Id.* at p. 852.)

Nonetheless, in its opening brief Glass argues only that the trial court, once it issued the original judgment, lacked the jurisdiction to set aside or amend it. Glass relies on citations by a treatise to two appellate court cases without any explanation of their application to the present circumstances, and merely repeats these conclusory arguments

20

in its reply brief.  Glass does *not* argue that the trial court could not correct the judgment for clerical error, or that its decision to do so was in error.[5]

Glass's "no jurisdiction" argument fails for two reasons, although neither is raised by Tnemec.  First, we are entitled, and do, disregard the Glass's argument because of its conclusory nature.  "An appellate court is not required to consider alleged errors where the appellant merely complains of them without pertinent argument" (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873), including when "the relevance of the cited authority is not discussed or points are argued in conclusory form." (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

Second, even if we were to consider Glass's "no jurisdiction" argument, it does not address the actual basis for the trial court's ruling—that the court made a clerical error in its original judgment.  "Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown' "].)  Glass does not affirmatively demonstrate error.  Therefore, its argument is unpersuasive.

## DISPOSITION

Glass's appellate claims are dismissed with prejudice as untimely made, with the exception of its appellate claim that the trial court did not have jurisdiction to modify paragraph 8 of the original judgment so as to delete the reference to Glass as the prevailing party regarding Tnemec's negligence cause of action.  As for this appellate claim, the court's ruling is affirmed.  Respondents are awarded their costs of appeal.

---

[5] To the extent Glass argues that the court's correction was not merely clerical, it does so only regarding this court's jurisdiction to consider its appeal.  If it intends this to apply to the merits of its appellate claim, we conclude the argument is tardily made and should be disregarded.  (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)

21

                _____

                Lambden, J.

We concur:


_____

Kline, P.J.


_____

Richman, J.